STATE OF MAINE                              SUPERIOR COURT
KENNEBEC, ss                                CIVIL ACTION
                                            DOCKET NO. AP-10-42
                                            MAN-KEN · 8/4/2011

JOSHUA D. JINNO

        Petitioner

v.                                          ORDER ON RULE 80(C) APPEAL

MAINE UNEMPLOYMENT
SECURITY COMMISSION

        Respondent


### BACKGROUND

Before the Court is an appeal brought by Joshua D. Jinno from a decision of the

Maine Unemployment Insurance Commission (hereinafter, "Commission"). Mr. Jinno

was disqualified from receiving benefits because the Commission found that he left

regular employment without good cause within the meaning of 26 MRSA §1193(1) and

1221(3).

Mr. Jinno was employed by Cold Mountain Builders as a carpenter in January of

2001. He is of Japanese descent. He started working for Cold Mountain Builders in

January of 2007 as a skilled carpenter. He resigned from this job on November 27, 2009

through a letter written to his employer. The letter indicated that Mr. Jinno believed he

was underpaid and underappreciated, and further informed his employer that he and his

family had been the subject of racial threats by certain co-workers. (Administrative

Record, hereinafter "Record" at 225). Mr. Jinno applied for unemployment benefits but

1

was denied when the deputy determined that he left work voluntarily without good cause, and that there was no evidence to suggest that he had told his employer about the racial slurs and threats. (R. at 221). That determination was appealed to the Division of Administrative Hearings which also found that he left employment without good cause. (R. at 107). The Administrative Hearing Officer (hereinafter AHO) found that while Mr. Jinno had a reasonable basis for his complaints about his employment due to the racial slurs and threats, he failed to meet his burden of proving that he took reasonable steps to communicate his complaints to his employer. (R. at 106). Mr. Jinno appealed the AHO's decision to the Commission, which affirmed the AHO's decision, finding that Mr. Jinno did not inform his employer about the slurs and threats until the time he gave notice of resignation, on Nov. 27, 2009. (R. at 3).

Mr. Jinno is represented by Attorney Kaighn Smith, Jr. and the Commission is represented by Assistant Attorney General Elizabeth Wyman. The parties were heard at oral argument on May 4, 2010. The Court has reviewed the administrative record, considered the parties' written and oral arguments, and issues the following order remanding the case to the Commission pursuant to 5 MRSA §11007(4)(2) for further factual development, consideration of regulations of the Commission, and reconsideration of the "good cause" requirement.

**ANALYSIS**

This Court's review of decisions of administrative agencies is limited to determining whether the agency's findings are supported by any competent evidence in

2

the record, and whether the agency correctly applied the law. *McPherson v. Maine Unemployment Insurance Commission*, 714 A.2d 818 (Me. 1998). The agency decision cannot be overturned unless the record before the agency compels a different result. *Id.* at 820.

In their decisions, both the AHO and the Commission relied upon the Law Court's decisions in *Merrow v. Maine Employment Security Commission*, 495 A.2d 1197 (Me. 1985) and *Therrien v. Maine Employment Security Commission*, 370 A.2d 1385 (Me. 1977). The Commission concluded that Mr. Jinno's burden of proof included the requirement that he communicate to his employer his concerns regarding his inability to work in a changed work environment and his need for different conditions before leaving employment. Failure to prove this, according to the Commission as well as the AHO, compels a finding that the employee has not left work for "good cause" attributable to the employment.

In addition, the AHO relied upon factors set forth in agency regulations, Chapter 17 of the *Rules Governing the Administration of the Employment Security Law* to be used in making determinations under 26 MRSA §1193(1). The AHO found specifically that while the comments Mr. Jinno heard in the workplace about race "demeaned him as a person, and made him feel threatened," (R. at 106) that he was ineligible for benefits because he did not take reasonable steps to communicate his concerns and fears to his employer.

The Court would note that neither *Merrow* or *Therrien* are particularly on-point factually with this case. The employee in *Merrow* was director of residential care in a nursing home who claimed that changed conditions at work, in terms of hours worked

3

together with changed demands placed on her, were taking a toll on her health. The Commission found that she failed to communicate her concerns to her employer, which deprived the nursing home of the opportunity to remedy the conditions about which she complained. *Merrow,* at 1201. Unlike Mr. Jinno, the employee was not confronted by a situation in which threats of violence were made against the employee or the employee's family, or in which the employee was the subject of racial slurs. The Court would note that in this case, the Commission found that Mr. Jinno had "a compelling reason to leave his employment" (R. at 3), and the AHO specifically found that it was reasonable for Mr. Jinno to feel threatened, that the comments demeaned him, and that he "certainly had a reasonable basis for his complaint about the employer." (R. at 106).

The employees in *Therrien* were unionized spinners who refused to participate in what was described as a volunteer trial work program. The program required them to increase production, for which they would be paid more money. They claimed that the new demands were beyond their abilities. They refused to participate, and were discharged for misconduct. The Law Court held that the Superior Court and Commission applied the wrong legal standard, and remanded the case to the Commission for additional findings to be made regarding whether the work demanded was objectively beyond the employees' abilities. If it was, the Law Court suggested that they might be entitled to receive benefits based upon the "good cause" standard. Clearly, the employer in *Therrien* was well aware, through the union's involvement if nothing else, about the claims being made by the employees about what they perceived to be intolerable conditions. 370 A.2d at 1387. The case therefore does not address the central issue presented here, which is whether an employee in Mr. Jinno's position was required to

4

communicate with his employer about his concerns or complaints before leaving employment.

With regard to the regulations relied upon by the AHO, but which were not mentioned in the Commission's decision, the Court would note that they do not explicitly apply to cases where a person, such as Mr. Jinno, was subjected to threats and slurs based upon race. They do apply to cases of "harassment," and it may well be that the AHO believed that this regulation (CMR 12-172-017(6) most closely fit Mr. Jinno's situation. The regulations imply that an employee may, under certain circumstances constituting harassment, be required to communicate with the employer before separation. For example, factor "F" allows the AHO to consider "the efforts made by the employer and the claimant to control or adjust the situation." However, the regulations do not explicitly require notification in situations of "harassment".[1] In addition, the regulations suggest that notification to the employer is not required in cases of domestic violence before the victim leaves employment.[2]

The Commission's argument before this court is essentially that this is a case of "changed circumstances" that falls squarely under the rubric of *Merrow* such that notice to the employer before separation is unquestionably required. And indeed, the employer testified that had he known about the threats and slurs he would not have tolerated either.

---

[1] In *Paige v. Maine Employment Security Commission,* 217 A.2d 321(Me. 1966) an employee successfully argued before the Law Court that she was entitled to benefits after having been threatened and assaulted by clients at an extended care facility for mentally retarded adults. The Court found this constituted "good cause." Factually, this case is more on point than either *Merrow* or *Therrien.* However, the employer in *Paige* was aware of her complaints and failed to change conditions. 217 A.2d at 324.

[2] CMR 12-172-017 9(C)(6) allows the AHO to consider in determining whether the claimant made "all reasonable efforts to preserve the employment" if the employee notified the employer "either before or within a reasonable time after separation " of the fact of the abuse. Mr. Jinno informed Cold Mountain Builder's owner, Mr. Fischer, at the time of separation.

5

Before determining that legal issue, however, the Court finds that it would be appropriate for the Commission to consider its own regulations which appear to allow AHO's to consider circumstances where an employee facing certain kinds of intolerable work conditions (such as harassment) or emergencies (such as domestic violence) is relieved of the obligation to report those circumstances to the employer before leaving employment when attempting to establish "just cause." The Commission in its conclusions seems to have assumed that the failure to consult with an employer regarding any sort of problem which motivates the employee to leave work prevents an employee from establishing "good cause." However, the Commission's own regulations indicate that it has, through rule-making conducted after both *Merrow* and *Paige* were decided, carved out exceptions to the employer notification rule. These regulations suggest to this Court a previous recognition by the Commission that the "changed circumstances" doctrine discussed in *Merrow* and *Paige* is not as broad, and the "good cause" standard not as unforgiving, as the Commission here argues.

In addition, missing from the Commission's decision are any explicit findings with respect to the communications between Mr. Jinno and Rick Tyler, and between Mr. Jinno and Nick Buck. The Commission simply concluded that Mr. Jinno failed to discuss the problems with his employer or supervisors, and the Commission did so without specific credibility determinations, and more importantly without regard to whether communications to Mr. Buck should be attributed to Mr. Jinno's employer (R. at 3).

Rick Tyler was a supervisor, and Mr. Jinno testified that Mr. Tyler acknowledged to him that he "might not want to buy that house" that he and his wife were thinking about buying, in light of the threats by an employee to burn it. As Mr. Jinno points out in

6

his brief, Mr. Tyler admitted that he discussed cross-burnings with Mr. Jinno, as well as Mr. Jinno's interest in buying a house in Searsmont. (R. at 74). Mr. Tyler at first could not recall warning Mr. Jinno about moving to Searsmont, but eventually denied being told this by Mr. Jinno. (Record at 76). With respect to Mr. Buck, Mr. Jinno testified that Mr. Buck had been described by Rob Scheibel, a head site supervisor, as Mr. Jinno's "direct supervisor. " (R. at 132). He also testified that he specifically went to Mr. Buck to tell him about the threats not only because he was his supervisor but because Mr. Buck was in his view "a person of liberal kind of thinking who would be understanding to something like racial issues." (R. at 132). Mr. Jinno described Mr. Buck's reaction as "shocked." (R. at 133). Mr. Buck testified that he did not remember this conversation but did not deny that it occurred. (R. at 68).

As noted above, the Commission found that Mr. Jinno "did not go to the employer or a supervisor" to complain about the problems he was experiencing." (R. at 3). Mr. Tyler at first did not remember, but eventually denied being told anything of particular concern. Mr. Buck did not remember, but Mr. Jinno explicitly remembered his communications with him. In the absence of credibility findings, or factual findings with respect to whether Mr. Buck was in a supervisory position (or simply a very experienced lead man), and/or whether it was reasonable for Mr. Jinno to believe he was a supervisor, this Court believes further factual findings should be made by the Commission.

7

## CONCLUSION

For the reasons stated above, the Court pursuant to 5 MRSA §11007(4)(B), remands this case to the Commission for further factual findings, for consideration of the Commission's regulations (CMR 12-172-017), and for reconsideration of the "good cause" standard.

_8/4/11_

**DATE**

**SUPERIOR COURT JUSTICE**

8

Date Filed __ 9/3/10 __ __ Kennebec __ Docket No. __ AP-10-42 __
County

Action __ Petition For Review __
80C

J. Murphy

Joshua D. Jinno

vs.

Maine Department of Labor,
Unemployment Insurance Commission

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Kaighn Smith, Jr., Esq.<br>84 Marginal Way, Suite 600<br>Portland, ME  04101-2480 | Elizabeth Wyman AAG<br>6 SHS<br>Augusta, Maine |

| Date of Entry | |
|---|---|
| 9/10/10 | Petition For Review Of Final Agency Action, filed 9/3/10.  s/Smith, Esq. Application To Waive Payment Of Filing Fee and Affidavit Of Petitioner, filed 9/3/10.  s/Smith, Esq. |
| 9/14/10 | ORDER, Murphy,  J. (9/13/10)<br>Filing fee is waived.<br>Copy to Plaintiff's attorney. |
| 9/20/10 | Entry of appearance filed by Elizabeth Wyman AAG on behalf of the def. |
| 9/30/10 | Administrative Record, filed 9/29/10.  s/Wyman, AAG  (In vault) |
| 9/30/10 | Notice And Briefing Schedule mailed to attorneys of record. |
| 11/10/10 | Brief of Petitioner, filed 11/8/10.  s/Smith, Esq. |
| 12/10/10 | Brief of Respondent Maine Unemployment Insurance Commission, filed. |
| 4/8/11 | Oral arguments scheduled for May 4, 2011 at 10:30. |
| 5/4/11 | Hearing on oral arguments held 5/4/11.  Murphy, J.  Kaighn Smith, Jr., Esq. for Petitioner, Elizabeth Wyman, AAG for Respondent.<br>Tape 1414, Index 4360-5196.<br>Taken under advisement. |
| 8/5/11 | ORDER ON RULE 80(C) APPEAL, Murphy. J.  (8/4/11)<br>For the reasons stated, the Court remands this case to the Commission for further factual findings, for consideration of the Commission's regulations, and for reconsideration of the "good cause" standard.<br>Copy to Atty Smith and AAG Wyman<br>Copy to repositories. |
| 8/5/11 | Notice of removal of record/exhibits mailed to Atty Smith and AAG Wyman. |